# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ESTATE OF ELIGA BRYANT, | ) |
| | ) |
| Plaintiff, | ) No. 11 C 1345 |
| | ) |
| v. | ) Jeffrey T. Gilbert |
| | ) Magistrate Judge |
| P.O. CUMMENS, #2730 individually and in his official capacity as a CHICAGO POLICE OFFICER; P.O. HURMAN, #2998 individually and in his official capacity as a CHICAGO POLICE OFFICER, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Clara Bryant, Administrator of the Estate of Eliga Bryant, prevailed at trial on an excessive force claim originally filed by her now-deceased son, Eliga Bryant, against the two Defendant Chicago Police Officers. On March 2, 2018, the jury returned a verdict for the estate of the late Mr. Bryant in the amount of $65,000 in compensatory damages and $10,000 in punitive damages, $5,000 against each of the two Defendant Officers. [ECF No. 196]. This matter is before the Court on Plaintiff's petition for attorneys' fees as the prevailing party under 42 U.S.C. § 1988. [ECF No. 212]. For the reasons discussed herein, Plaintiff's petition for attorneys' fees is granted in part and denied in part.

## I. BACKGROUND

Attorney Elliot Zinger represented Eliga Bryant prior to his death in an excessive force claim against Defendant Police Officers Cummens and Hurman. Mr. Bryant's death was not related to the events that gave rise to this lawsuit. After Mr. Bryant's death, Mr. Zinger then was retained by Clara Bryant, Administrator of the Estate of Eliga Bryant, to represent Mr. Bryant's

estate in this lawsuit. Shortly before the case was set to go to trial, Mr. Zinger brought in attorney Larry Dreyfus as co-counsel to assist with preparing the case for trial and the trial of the case. Plaintiff prevailed at trial and is entitled to recover her attorneys' fees pursuant to 42 U.S.C. § 1988. Plaintiff requests an hourly rate of $450 for Mr. Zinger and a rate of $400 for Mr. Dreyfus. Mr. Zinger seeks $276,912 in attorney's fees for 615.36 hours of work, and Mr. Dreyfus seeks $85,640 in fees for 214.10 hours of work. Based on these hourly rates and the hours expended, Plaintiff seeks a total attorneys' fee award in the amount of $362,552.[1]

Defendants object to the hourly rates requested by Mr. Zinger and Mr. Dreyfus as well as to the total number of hours submitted for compensation. Defendants argue that: (1) Plaintiff's attorneys' hourly rates are too high; (2) certain tasks they performed are not compensable, including those relating to the probate of Mr. Bryant's estate, witnesses who were not called at trial, a hearing loss claim that was dismissed before trial, and the mistrial that resulted from Plaintiff's counsel's actions; (3) some of the bills are duplicative, vague and/or excessive; and (4) certain work has been billed at an attorney rate for matters that are more appropriately billed at a rate paralegal or associate attorney rate. Based on these objections, Defendants contend that the lodestar for Plaintiff's attorneys (*i.e.*, the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate) should be $157,367.50. Defendants further argue that amount should be reduced by 50% based on what they argue was only modest success at trial, and

---

[1] Plaintiff filed an initial petition seeking reimbursement for $305,622.50 in attorneys' fees, including $234,742.50 for Mr. Zinger based on 521.36 hours worked performed at a rate of $450 and $70,880 for Mr. Dreyfus based on 177.20 hours of work performed at a rate of $400. [ECF No. 196]. Plaintiff then filed a Supplemental Petition for Attorneys' Fees [ECF No. 234], which included an additional 93.71 hours of work performed by Mr. Zinger after the completion of the trial for an additional $42,169.50 in attorney's fees and an additional 36.90 hours of work performed by Mr. Dreyfus for an additional $14,760 in attorney's fees. That brought Plaintiff's total request to $362,552 in attorneys' fees.

2

that the final figure for Plaintiff's attorneys' fees should be $78,683.75, or less than one-quarter of the fees Plaintiff has requested.[2]

## II. ANALYSIS

As an initial matter, Plaintiff argues that Defendants have waived certain objections to Plaintiff's attorneys' fees because Defendants did not participate in good faith in the Local Rule 54.3 process, except to the extent that Defendants object that: (1) the attorneys' hourly rates are too high; (2) Plaintiff did not call all listed witnesses; and (3) Plaintiff abandoned Mr. Bryant's hearing loss damage claim  The Court disagrees that Defendants waived any objections to Plaintiff's fee petition by not participating fully in the Local Rule 54.3 process. Defendants did not have most of the information that Local Rule 54.3 requires the parties to exchange at the outset of this process prior to Plaintiff filing her petition for fees. Also, the large gulf between the parties' positions concerning the appropriate amount of attorneys' fees to be awarded in this case indicates to the Court that nothing could have been resolved during the process contemplated by Local Rule 54.3 even if Defendants had engaged in that process fully and raised all the objections they are raising now in opposition to Plaintiff's petition. That said, the Court agrees with Plaintiff that Defendants' counsel should have participated more fully in the Local Rule 54.3 process and should have raised many, if not all, of the obejctions they are raising now in that process. Plaintiff then could have addressed those arguments in her opening petition instead of just in reply which is the whole point of the Local Rule 54.3 process. The Court will, however, nevertheless address all the parties' arguments on their merits.

---

[2] The Court notes that Defendants did not file any response to Plaintiff's Supplemental Petition [ECF No. 234]. Arguably, that means they waived any objection to the attorneys' fees set forth in the Supplemental Petition. If Defendants do not object to the amounts sought in Plaintiff's Supplemental Petition, that would bring Plaintiff's total attorneys' fee recovery to $135,613.25 using Defendant's proposal of $78,683.75 (*i.e.*, $78,683.75 + $42,169.5 + $14,760) which is a little over one-third of what Plaintiff has requested.

3

### A. Lodestar Calculation

The starting point for the determination of a reasonable attorney's fee is the calculation of the lodestar—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 639-640 (7th Cir. 2011). The Seventh Circuit has defined a reasonable hourly rate as one that is "derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640 (quoting *Denis v. Dunlap,* 330 F.3d 919, 930 (7th Cir. 2003)). The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Pickett,* 664 F.3d at 640 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984)). If the fee applicant satisfies this burden, the burden then shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1313 (7th Cir. 1996)).

Recognizing the difficulty in determining the hourly rate of an attorney who practices primarily using contingent fee arrangements with his clients, the Seventh Circuit has advised district courts to rely on the "next best evidence" of an attorney's market rate, namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555 (7th Cir. 1999). If a fee applicant does not satisfy her burden, the district court has the authority to make its own determination of a reasonable rate. *See Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 409 (7th Cir.1999). Once the district court has established the lodestar, it then may adjust the amount of the total fee to account for factors not subsumed by the lodestar calculation. *See Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 543-44 (2010).

1. **Reasonable Hourly Rate**

The Court first will address the hourly rates requested by Mr. Zinger and Mr. Dreyfus. Mr. Zinger seeks an hourly rate of $450 and Mr. Dreyfus $400. The presumptive hourly rate is the actual billing rate an attorney typically receives for similar litigation. *See Moore v. Watson*, 2013 WL 1337153, at *4 (N.D. Ill. March 29, 2013). However, there are situations, as in this case, when the attorney has little evidence of an established market rate because the attorney most often relies on contingent fee arrangements or statutory fee awards. *Id*. In these types of cases, a court must evaluate the "next best evidence" of the attorney's market rate—"evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Pickett*, 664 F.3d at 640.

Mr. Zinger never has been awarded a fee based on an hourly rate. He almost always has received his fees based on a contingency. In the only other case in which Mr. Zinger has sought attorney's fees, which currently is pending in this court house, he asked for an hourly rate of $375. However, his role in that case was limited. Mr. Zinger was not lead counsel; he did not participate in the entire case; and he did not advance any costs. Defendants object to Mr. Zinger's proposed hourly rate of $450 and say that Mr. Zinger be awarded an hourly rate of $350. But they provide no substantive evidence to show that is the most appropriate hourly rate for Mr. Zinger in this case other than their say-so.

In the Court's view, a rate of $350 per hour is not reasonable in this case for a lawyer with Mr. Zinger's years of experience in civil rights litigation. The affidavits of attorneys Preyar, Walsh and Grannich submitted by Mr. Zinger effectively say as much, but they do not provide much more useful information other than their conclusory opinions, as Mr. Zinger's colleagues, that $450 is a reasonable rate based, in part, on their knowledge that other attorneys (including themselves) with

5

different levels of experience in this area and years of practice bill their time at rates as high as $475 to $500 or $600 an hour. But Mr. Zinger is not requesting that the Court set his rate in that range so presumably he agrees that his rate should be set somewhat lower compared to the rates of other attorneys who practice in this area including the affiants.

In the Court's view, on this record, an hourly rate of $400 for Mr. Zinger is appropriate and reasonable in this case based on his years of practice, his experience, his role in this case and the lack of any solid evidentiary basis for a higher hourly rate for him in other cases in which he has participated. That is somewhat more than the hourly rate he is requesting in a case that was litigated during the same time period but in which Mr. Zinger did not serve in a lead trial lawyer capacity. It is less than the rate suggested by Mr. Zinger's colleagues, but the Court must be cautious in accepting at face value those conclusory opinions. In the Court's view, an hourly rate of $400 is fair and reasonable for the work done in this case by Mr. Zinger and strikes the right balance between the parties' respective arguments and the hourly rate evidence presented.

As to the hourly rate for Mr. Dreyfus, Mr. Dreyfus seeks an hourly rate of $400, but he also has limited experience in billing or being awarded attorney's fees on an hourly basis. In the one case in which Mr. Dreyfus was awarded fees as set forth in the affidavit he submitted, he was awarded an hourly rate of $325 in a case in which he was lead counsel. By contrast, in this case, Mr. Dreyfus played a supporting role. Defendants propose an hourly rate of $350 for Mr. Dreyfus and $250 for associate or paralegal time. The Court agrees those are fair and reasonable rates for Mr. Dreyfus on this record, for the reasons discussed above, and given his supporting role in this case.[3]

---

[3] Plaintiff points to the Laffey Matrix as additional evidence to support the reasonableness of the rates she has requested for her attorneys. The Laffey Matrix postulates that $581 per hour would be a reasonable rate for Mr. Zinger and Mr. Dreyfus. This is far more than what Mr. Zinger and Mr. Dreyfus actually request for themselves. The fact that the Laffey Matrix spits out a number that is much higher than the rates

## 2. Number of Hours Reasonably Expended

Next, the Court turns to the number of hours expended by Plaintiff's attorneys. Mr. Zinger seeks reimbursement for 615.36 hours of attorney time, and Mr. Dreyfus seeks 214.20 hours of attorney time. Defendants object to the total number of hours submitted for compensation. Defendants argue that: (1) certain tasks are not compensable, including for the probate of Mr. Bryant's estate, witnesses who were not called at trial, a hearing loss claim that was dismissed before trial, and the mistrial that resulted from Plaintiff's counsel's actions; (2) some of the attorneys' bills are duplicative, vague and/or excessive; and (3) certain work has been billed at an attorney rate for matters that are more appropriately billed at a rate for a paralegal or associate attorney. The Court rules on each of these objections as follows:

1. *The probate of Mr. Bryant's estate.* The Court agrees that Defendants should not have to compensate Plaintiff's attorneys for the time they spent in connection with probate proceedings for Mr. Bryant's estate. That work was performed in state not federal court. If Mr. Bryant's mother had hired a lawyer other than Mr. Zinger to open and process a probate estate for her son, that lawyer would not be entitled to recover for his or her time in this case. In the Court's view, the time Mr. Zinger spent in connection with the probate proceedings is not compensable under 42 U.S.C. § 1988.

2. *The mistrial.* The Court agrees that Defendants should not have to compensate Plaintiff's attorneys for the time spent in court on the day of the mistrial. Ultimately, Plaintiff's counsel was responsible for the mistrial. Plaintiff's attorneys raised a *Batson* challenge in chambers during jury selection and outside the presence of the jury. While the Court and counsel were addressing that

---

requested by Mr. Zinger and Mr. Dreyfus, or recommended by their colleagues, does not necessarily mean that Plaintiff's proposed hourly rates for her attorneys are any more reasonable than the rates the Court has chosen at $400 per hour for Mr. Zinger and $300 for Mr. Dreyfus.

issue, and Defendants' counsel were in a separate conference room discussing how to respond to the *Batson* challenge, one of Plaintiff's counsel (Mr. Dreyfus) explained to his client what was happening in the courtroom in front of a live microphone with potential jurors still in the courtroom. The Defendant Police Officers also were in the courtroom when this occurred and heard what Mr. Dreyfus said to his client. They expressed serious concern, through their counsel, that Mr. Dreyfus's discussion of the reason for the *Batson* challenge with his client in front of a live microphone had the potential to prejudice the jurors who heard those comments against the Defendant Officers. The Court agreed and granted Defendants' request for a mistrial. In the Court's view, Plaintiff's counsel's conduct necessitated dismissing the jury whatever the ultimate ruling would have been on the *Batson* challenge. The potential jurors would not have learned of the *Batson* challenge but for the live microphone incident. Plaintiff is not entitled to recover her attorneys' fees for a wasted day of jury selection that had to be repeated largely because of Plaintiff's counsel's conduct.

3. *The hearing loss claim.* The Court overrules Defendants' objection to the time Plaintiff's attorneys spent on the hearing loss claim. Plaintiff's attorneys reasonably pursued this claim in good faith, but without Mr. Bryant available to testify at trial, it was a difficult claim to prove, and they reasonably decided to drop the claim. Even if Mr. Bryant had been available to testify, the hearing loss claim had its pluses and minuses but that does not mean that Plaintiff's attorneys should be penalized for pursuing it during the discovery phase of this case and deciding, on balance, not to pursue the claim at trial. And that decision was made well-before trial.

4. *Witnesses who were not called at trial.* The Court overrules Defendants' objection. It is not uncommon that a party plans and prepares to call witnesses that it does not end up calling to testify at trial. Plaintiff's reasons for not calling some of the witnesses, including Mr. Camino, are

reasonable, and the Court does not believe her attorneys' fees should be reduced for the attorneys' prudent decision not to call certain witnesses at trial. Their reason for not calling certain witnesses is fully explained in Plaintiff's briefs in support of her fee petition, and the Court agrees that there is no good reason to deny reimbursement for the time spent on these witnesses for the reasons argued by Defendants.

5. *Duplicative time and associate/paralegal tasks billed at attorney time.* The Court sustains in part and overrules in part Defendants' objections relating to duplicative time and associate or paralegal tasks billed at the full attorney hourly rate. The Court agrees that some of the tasks performed by Mr. Dreyfus were more reasonable for an associate attorney to perform or more administrative in nature. As set forth below, the Court carefully reviewed the time sheets submitted by Mr. Zinger and Mr. Dreyfus and eliminated or reduced certain time where the Court determined that it was duplicative, excessive or not compensable.

The Court has reviewed line by line the time sheets submitted by both Mr. Zinger and Mr. Dreyfus in the initial petition for their pre-trial and trial time and the supplemental petition for their post-trial time. For the reasons discussed above, after reviewing Mr. Zinger's time sheets, the Court eliminates 30.45 total hours requested, including 7.0 hours for the mock trial,[4] 15.25 hours for opening and continuing work on the probate estate, 7.0 hours for the day of the mistrial, and 1.2 hours for delivering a courtesy copy to chambers and duplicative entries, thereby reducing Mr.

---

[4] This case was not so complex that a mock trial was necessary, as opposed to elective, for Plaintiff's counsel properly to prepare the case to be presented to the jury. *See Montanez v. Fico et al.*, 931 F. Supp. 2d 869, 881-82 (N.D. Ill. March 18, 2013); *O'Sullivan v. City of Chicago,* 484 F. Supp. 2d, 829, 837 (N.D. Ill. 2007). The challenges Plaintiff's counsel confronted in presenting the case to the jury, while not insignificant, do not justify requiring Defendants to reimburse him for his time spent presenting the case to his summer interns. Mr. Zinger's time sheets indicate that he used his summer clerks as mock jurors which no doubt enhanced their experience working in his office and redounded to his intangible benefit in terms of good will gained with those employees for an interesting summer. But Defendants do not have to reimburse him for that time spent. *See* [ECF No. 212], at 49 (time entries for trial mocks with summer interns).

Zinger's number of compensable hours to 584.91 (615.36 minus 30.45). Therefore, a reasonable attorney's fee in this case, based upon the time reasonably spent by Mr. Zinger at a reasonable hourly rate is $233,964 (584.91 hours at $400/hour), which amounts to approximately $31,000 per year for the seven and half years to date that Mr. Zinger represented Mr. Bryant and his estate.

After reviewing the time sheets for Mr. Dreyfus, the Court eliminates 7.50 hours of time for the day of the mistrial. The Court also re-allocates some of Mr. Dreyfus's time to be compensated at an associate/paralegal rate. The Court finds that 69.4 hours of tasks performed by Mr. Dreyfus should be compensable at the lower associate/paralegal rate, including specifically for time Mr. Dreyfus spent performing legal research, annotating cases and deposition testimony, assisting Mr. Zinger in preparing materials to be filed, and organizing the case file and materials. The Court finds that Mr. Dreyfus has 137.20 hours at his full rate of $300 and 69.4 hours at an associate/paralegal rate of $250/hour. Therefore, a reasonable attorney's fee in this case, based upon the time reasonably spent by Mr. Dreyfus at a reasonable hourly rate is $41,160 (137.2 hours at $300/hour) plus $17,350 (69.4 hours at $250/hour) for a total of $58,510.

For the reasons discussed above, the Court concludes that Plaintiff's lodestar calculation is $292,474 in attorneys' fees, allocated as $233,964 for Mr. Zinger and $58,510 for Mr. Dreyfus.

**B. Reduction of Lodestar**

The Court has done its best under the circumstances to determine a reasonable hourly rate and the hours reasonably expended in this case. That, however, does not end the analysis. Once the lodestar has been determined, a court may adjust the award based on several factors, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir.2010). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the

case." *Id.* (quoting *Connolly v. Natl. School Bus Serv., Inc.,* 177 F.3d 593, 597 (7th Cir.1999)); *see also Hensley,* 461 U.S. at 430 n.3.

Defendants contend that the lodestar should be reduced by 50% based on lack of success, minimal impact on the public interest, and the absence of novelty and complexity. Not surprising, Plaintiff disagrees and argues that no reduction is warranted. The Court agrees with Plaintiff and finds that Defendants' proposal for a 50% reduction of the lodestar is arbitrary and Defendants' arguments in support of such a reduction lack merit.

Plaintiff was successful at trial. Mr. Zinger and Mr. Dreyfus obtained a significant verdict for their client. The jury awarded $65,000 in compensatory fees and $10,000 in punitive damages, which, maybe not coincidentally, is the exact amount ($75,000) that a federal judge recommended Defendants pay to settle the case prior to trial during court-sponsored mediation. Plaintiff accepted that recommendation. Defendants did not. *See* [ECF No. 212], at 3 (discussion of settlement negotiations). The jury awarded punitive damages against the two Defendant officers. That means the jury thought Defendants' conduct was particularly reprehensible. This result has a significant impact on the public interest; the jury called the officers to account for conduct they felt was egregious enough to merit punitive damages. That is a message the Defendant Officers, the Chicago Police Department, and the City of Chicago should hear.

For most of the case, Plaintiff was represented solely by Mr. Zinger while Defendants were represented by at least two or three lawyers both at trial and during all discovery and pretrial proceedings. The Court finds that it was completely reasonable for Mr. Zinger to bring in another lawyer to help him prepare the case for trial and to try the case with him. It is not disputed that bringing in Mr. Dreyfus to assist Mr. Zinger increased the attorneys' fees in this case, but the Court

will not penalize Plaintiff for that by reducing the recoverable attorneys' fees in this case by an arbitrary percentage.

In addition, this case was not a run-of-the-mill case. Mr. Eliga Bryant, the original plaintiff, died during the prosecution of the case. Presenting his case in a favorable way to the jury was challenging. First, Mr. Bryant's testimony had to be presented to the jury mostly through the deposition examination taken by Defendants' counsel years before the trial. Second, the medical issues were difficult because Mr. Bryant had a pre-existing brain trauma. Third, the treating physician witness that Plaintiff intended to call at trial moved out of the country and was not available for trial or a video deposition to preserve trial testimony.

Based on these considerations, the Court declines to reduce the lodestar in this case. The Court already has adjusted Mr. Zinger's and Mr. Dreyfus's hourly rate and either eliminated or reduced some non-compensable time for the reasons discussed above. Defendants' arguments that some of the same considerations justify another reduction are redundant and lack merit.

**C. Prejudgment Interest**

Finally, Plaintiff seeks prejudgment interest on the Court's award of attorneys' fees. An award of prejudgment interest is left to the sound discretion of the district court. *See United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d 790, 799 (7th Cir. 1993). In cases involving violations of federal law, the Seventh Circuit has recognized that prejudgment interest "should be presumptively available" because "[w]ithout it, compensation is incomplete and the defendant has an incentive to delay." *Id.* (quoting *Gorenstein Enter., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)). However, the Court is using the current market rate as the reasonable hourly rate in its lodestar analysis. By awarding the current market rate, the Court has eliminated the need to calculate interest prior to entry of judgment or submission of the fee

petition. *See Shea v. Galaxie Lumber & Construction Company, Ltd.,* 1999 WL 13 879 1, at *4 (N.D. Ill. March 2, 1999) (recognizing that enhancement for the delay in payment is appropriate by either awarding the fees and costs using current attorney rates or past rates with interest) (citing *Smith v. Village of Maywood,* 17 F.3d 219, 221 (7th Cir. 1994)). Therefore, the Court denies Plaintiff's request for prejudgment interest on top of an award of current market rates.

### III. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Plaintiff's petition for attorneys' fees under 42 U.S.C. § 1988 [ECF No. 212] is granted in part and denied in part. The Court awards Plaintiff's attorneys, Mr. Zinger and Mr. Dreyfus, a total of $292,474 in fees allocated between them as discussed above.

It is so ordered.

_____
Magistrate Judge Jeffrey T. Gilbert

Dated: October 9, 2018